## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

VINCENT L. GUINN, M.D.                          )
3433 Agler Road                                 )
Columbus, Ohio 43219                            )
                                                )
            Plaintiff,                          )
                                                )
v.                                              )
                                                )
MOUNT CARMEL HEALTH SYSTEMS                     )
c/o Donald E. Davies, Statutory Agent           )
10 West Broad Street, Suite 2100                )
Columbus, Ohio 43215                            )
                                                )
            Defendant(s).                       )
                                                )
and                                             )
                                                )
TRINITY HEALTH CORPORATION (dba)                )
Mount Carmel Health Systems                     )
c/o Kelly Leahy, Statutory Agent                )
500 South Cleveland Ave., Suite 208, West Wing  )
Westerville, Ohio 43081                         )
                                                )
and                                             )
                                                )
CLAUS VON ZYCHLIN, individually and in his      )
official capacity with Mount Carmel Health      )
Systems as President and CEO                    )
793 West State Street                           )
Columbus, Ohio 43222-1560                       )
                                                )
and                                             )
                                                )
THOMAS R. ALEXIS, M.D., individually and        )
in his official capacity with Mount Carmel      )
Health Systems                                  )
4310 Clime Road, Suite B                        )
Columbus, Ohio 43228                            )
                                                )
and                                             )
                                                )
MICHAEL R. MURNANE, M.D., individually and      )

**2:09 cv 226**

JUDGE ⬚⬚⬚⬚⬚⬚⬚⬚

MAGISTRATE JUDGE

MAGISTRATE JUDGE KEMP

**COMPLAINT WITH**
**JURY DEMAND**
**ENDORSED HEREON**

| | |
|---|---|
| in his official capacity as Chairperson of | ) |
| the Medical Executive Committee of | ) |
| Mount Carmel Health Systems | ) |
| 745 West State Street, Suite 750 | ) |
| Columbus, Ohio 43222 | ) |
| | ) |
| and | ) |
| | ) |
| MEDARD R. LUTMERDING, M.D., individually | ) |
| and in his official capacity as Chairperson of | ) |
| the Clinical Department Council of | ) |
| Mount Carmel Health Systems | ) |
| 750 Mount Carmel Mall, Suite 300 | ) |
| Columbus, Ohio 43222 | ) |
| | ) |
| and | ) |
| | ) |
| BARNEY B. BEAVER, D.O. | ) |
| Knollwood Physicians Group | ) |
| 3301 Knollwood Drive | ) |
| Medical Park Four | ) |
| Mobile, Alabama 36693 | ) |

Plaintiff, Vincent L. Guinn, M.D. (hereinafter "Plaintiff") for his Complaint against Defendants, Mount Carmel Health Systems, Thomas R. Alexis, M.D., Michael R. Murnane, M.D., Medard R. Lutmerding, M.D., and Barney B. Beaver D.O. states as follows:

## INTRODUCTION

Dr. Vincent Guinn is a successful African American physician who opened his medical practice in 2002 specializing in Electrophysiology and cardiac care. Prior to Dr. Guinn opening his own practice, he was associated with a group practice and, during the years 2001-2002, was the Chairperson of the Department of Cardiovascular Disease of Mount Carmel Medical Center in Columbus, Ohio from 1999 to 2002 and vice-chairperson from 1998 through 1999. While a member of this group practice, and Chairperson of the Department of Cardiovascular Disease, Dr. Guinn's competency and

2

ability to render services within the community's standard of care was never questioned by any of the Defendants.

Since that time, Dr. Guinn was primarily associated with Mount Carmel Health Systems. Beginning early 2007, the Defendants purposefully and intentionally began a course of conduct to discriminate against him because of his race. Specifically, they attempted to drive Dr. Guinn out of Mount Carmel Health by claiming, incorrectly, that Dr. Guinn's care relating to one specific patient fell below the standard of care.

On or about, April 3, 2007, the Defendants summarily suspended Dr. Guinn's privileges for device implantation, device explantation, lead implantation, lead explantation, device revision, lead revision, and pocket revision to include pacemakers, defibrillators and loop recorders. This was done without adequately reviewing the relevant medical records to verify the truth of the reason for the suspension.

The Defendants applied different terms and conditions to Dr. Guinn as a Black physician than were applied to similarly situated White physicians. Dr. Guinn's privileges to implant and/or revise ICD devices were summarily suspended without notifying Dr. Guinn of the name of the patient or being offered an opportunity to respond to the Defendants after review of the medical records. The identity of the patient and the care rendered were disclosed to Dr. Guinn only after the suspension had already been ordered by the Clinical Department Council of Mount Carmel Health.

A nationally known and respected eletrophysiologist reviewed the medical records of the patient in question and opined that, to a reasonable degree of medical certainty, Dr. Guinn's care for this specific patient did not fall below the community standard of care. He found that as to this specific patient Dr. Guinn actually exercised

3

appropriate clinical judgment and attempted to save the patient from additional difficult life threatening medical procedures. This expert not only practices as an eletrophysiologist but has also sat as the president of an organization that offers certification for competency in cardiac pacing and defibrillation. Further, this expert was the lead author in drafting authoritative guidelines that other physicians relay upon in choosing what method of care they should offer for patients.

Despite the opinion of this highly regarded expert, the Defendants continued in their efforts to deprive Dr. Guinn his medical privileges. The Defendants ignored the facts of the case and ultimately drove the Plaintiff to considerably limit his association with Mount Carmel Health resulting in the disruption and maintenance of the doctor/patient relationship.

## **PARTIES**

1.    Plaintiff is an African American who resides in Plain City, Delaware County, Ohio and is a duly licensed physician permitted to practice medicine within the State of Ohio.

2.    Mount Carmel Health Systems (hereinafter "MCH") is a duly licensed a not for profit Ohio corporation authorized to conduct business within the State of Ohio. MCH's principle place of business is Columbus, Franklin County, Ohio.

3.    Defendant, Trinity Health Corporation, (dba as Mount Carmel Health Systems) is an Indiana Nonprofit Corporation with its principle place of business in Michigan. Trinity Health Corporation owns Mount Carmel Health Systems and does business in the State of Ohio as "Mount Carmel Health Systems."

4

4.      Defendants Thomas R. Alexis, M.D.,  Michael R. Murnane, M.D., Medard R. Lutmerding, M.D., and Barney B. Beaver D.O. are duly licensed physicians with their principle places of business in Columbus, Franklin County, Ohio at the time the acts complained of in this Complaint occurred.

## JURISDICTION AND VENUE

5.      Plaintiff hereby realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully rewritten herein.

6.      This action is authorized and instituted pursuant to 42 U.S.C. § 1981; 42 U.S.C. § 1985, and the Common Laws of the State of Ohio.

7.      Original jurisdiction over the action is conferred pursuant to 28 U.S.C. §1331 because the action arises under the laws of the United States.  Supplemental jurisdiction over Plaintiff's state law claims arises under 28 U.S.C. §1367.

8.      Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. §1291(b) because Defendants, Thomas R. Alexis, M.D.,  Michael R. Murnane, M.D., and  Medard R. Lutmerding, M.D. have their principal place of business in Columbus, Franklin County, Ohio.  Further stating, the claims complained of in the Plaintiff's Complaint all arose, in whole or in part, in Columbus, Franklin County, Ohio.

## FACTS RELEVANT TO ALL CLAIMS AND PARTIES

9.      Plaintiff hereby realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully rewritten herein.

10.     Plaintiff is a duly licensed physician licensed to practice medicine in the State of Ohio.  Plaintiff's medical practice is specialized in the area of Electrophysiology and

5

Pacing Interventionalists. Plaintiff is a graduate of The Ohio State University College of Medicine having received his medical degree in 1984.

11.    Plaintiff became Board Certified in Internal Medicine in 1986, successfully passed the NAPSE examination for Electrophysiology and Cardiac Pacing in 1991, and became Board Certified in Cardiovascular Disease in 1997 and was re-certified in 2007.

12.    The Plaintiff started his own medical practice in 2002 called "EPI" (Electrophysiology and Pacing Interventionalists) in Columbus, Ohio and, at the time of these allegations, was a competitor of several practices in Columbus, Franklin County, Ohio including Defendants' Murnane and Beaver's practices.

13.    Since he passed his NAPSE examination in Electrophysiology and Cardiac Pacing in 1991, the Plaintiff primarily practiced at medical facilities associated with MCH. These practices include but are not limited to Mount Carmel Medical Center, Columbus, Ohio; Mount Carmel East Hospital, Columbus, Ohio; St. Ann's Hospital, Westerville, Ohio; and New Albany Surgical  Hospital, Columbus, Ohio.  Plaintiff also holds privileges to practice medicine at other medical facilities in and around the central Ohio area.

14.    During the years 1999-2002, the Plaintiff was the Chairperson of the Department of Cardiovascular Disease of Mount Carmel Medical Center in Columbus, Ohio.  During the years 1998 through 1999 the Plaintiff was vice chairperson.

15.    The Plaintiff has published several articles and/or abstracts related to electrophysiology and cardiac care.

16.    Until on or about April 3, 2007, the Plaintiff had clinical privileges with MCH including but not limited to the management of patients with cardiovascular diseases and

critical illnesses including patients in the CCU, MICU, and SICU. The Plaintiff's clinical privileges also included: insertion/management of swan ganz catheters, CVP lines, A-lines, temporary pacemakers, management of ventilators, interpretation of EKG's, stress testing, M-mode, 2D and Doppler echocardiograms, cardioversion, and pericardiocentesis, diagnostic cardiac cauterization and percutaneous insertion of intra-aortic balloon pump. Further including, moderate/deep sedation, EPS, Radiofrequency catheter ablation, and insertion of permanent pacemakers and for device implantation, device explantation, lead implantation, lead explantation, device revision, lead revision, and pocket revision to include pacemakers, defibrillators and loop recorders

17. Plaintiff states that these privileges were granted to the Plaintiff pursuant to MCH's bylaws and credentialing manual. Further stating, utilizing these privileges, the Plaintiff entered into agreements/contracts with patients to provide patient care at MCH and other medical facilities and the Plaintiff generates income for himself and other employees of his medical practice. MCH was aware of these contracts and/or agreements.

18. On or about April 3, 2007 a meeting of the Clinical Department Council ("CDC") of Mount Carmel West was called to order by Defendant, Medard Lutmerding, M.D. ("Lutmerding"). Upon information and belief, while at this meeting, Defendant, Thomas Alexis, M.D. ("Alexis") intentionally, recklessly, and/or negligently reported that the Plaintiff had implanted an ICD device in a patient whose previous ICD device pocket had broken down and was infected. Further, Alexis intentionally, recklessly, and/or negligently reported that, in fact, "infection was noted." This false statement and incorrect assertion is demonstrated by the minutes of the April 3, 2007 CDC meeting.

7

19.    Alexis reported this information to the CDC without adequately or appropriately reviewing the necessary medical records or discussing the patient's care with the Plaintiff or the patient.    Based on this incorrect and false information, the CDC summarily suspended, without due process, the Plaintiff's clinical privileges.

20.    The Plaintiff was notified of this summary suspension in a correspondence dated April 13, 2007 from MCH's CEO, Claus von Zychlin, wherein the Plaintiff was informed that the Medical Executive Committee ("MEC") would meet to consider this suspension.

21.    The Plaintiff was also notified of this summary suspension by Defendant Lutmerding and Defendant, Barney Beaver, M.D. (hereinafter "Beaver").    Still, the Plaintiff was not informed of the patient's case, nor was the Plaintiff given the opportunity to review the appropriate medical records and/or offer an informed response to the CDC prior to this summary suspension.

22.    On or about April 17, 2007 the MEC of MCH met.    At this meeting Defendant(s) Beaver and Lutmerding, with reckless disregard to the Plaintiff's rights, intentionally, recklessly, and/or negligently reported to the MEC claiming that the Plaintiff had implanted an ICD device in a fully eroded and infected ICD pocket.    This information was false and at the time this information was reported to MCH by Defendants Beaver and/or Lutmerding, neither Beaver nor Lutmerding had reviewed any medical records or other documents substantiating these claims.    The Defendants had not discussed the patient's care with the Plaintiff and refused to allow the Plaintiff the opportunity to refute the claims or explain the use of his clinical judgment.    This meeting was held in the presence of Defendant Michael Murnane, M.D. (hereinafter "Murnane") who was the chairperson of the MEC.

8

23.    As was true with the CDC meeting, prior to the MEC meeting, the Plaintiff was not given an opportunity to offer an informed response explaining the use of his clinical judgment to the MEC. Eventually, the MEC, with reckless disregard to the Plaintiff's rights, decided to uphold the CDC's summary suspension of the Plaintiff's clinical privileges. The MEC relied upon Defendant Beaver's false information in upholding the CDC's summary suspension. Had Defendant Beaver actually reviewed the records in this case and given the Plaintiff the opportunity to review the matter with him, Beavers would have had to report that, in fact, there were no open wounds, that, in fact, the ICD pocket had not fully eroded, that there was no infection, and that the Plaintiff's care in this particular case was not below the appropriate standard of care.

24.    In a correspondence from Defendant Murnane dated May 1, 2007, the Plaintiff was informed that the MEC upheld the Plaintiff's suspension of his medical privileges with MCH. The Plaintiff exercised his rights pursuant to the MCH bylaws and requested a hearing before an "Ad Hoc Hearing" to contest the suspension of his privileges.

25.    An "Ad Hoc Hearing" was held on October 16, 2007. The record from this hearing demonstrates that the information provided by Defendant Beavers and Lutmerding to the MEC on April 17, 2007 and again on October 16, 2007 was incorrect and false. Further, the information presented at the "ad hoc hearing" demonstrates that Defendant Beavers failed to review the entire set of the patient's records as it related to the subject matter patient care in this case until three (3) days before the Ad Hoc Hearing that took place on October 16, 2007. This clearly demonstrates that Defendant Beavers had not reviewed the patient's pertinent records prior to providing false and misleading information to the MEC. Yet, during this time, the Plaintiff's practice, without due

9

process and without a proper review of the patient's medical records in this case, was brought to a halt causing severe harm to the Plaintiff's reputation, financial well-being, and his medical practice.

26.     Had Defendant Beavers and Lutmerding reviewed the entire set of relevant medical records prior to the MEC meeting in this case they would have discovered, in fact, that there was no full erosion of the ICD pocket/insertion site, that there was no infection, and that the Plaintiff's care of this particular patient did not fall below the standard of care.

27.     Wrongfully, the Ad Hoc Hearing Committee rendered a decision upholding the MEC's decision basing its decision upon the unsupported accusations of Defendant Beaver, Lutmerding, and Dr. William Fanning, M.D.  The Plaintiff exercised his rights pursuant to the MCH bylaws and requested a hearing before the MCH Board of Trustees. This hearing took place on July 14, 2008. The MCH Board of Trustees rendered a decision upholding the Ad Hoc Committee's decision that was rendered July 28, 2008.

28.     On two different occasions, once in 2007 and again in 2008, MCH wrongfully reported to the National Practitioner Databank that the Plaintiff's privileges to practice medicine with MCH were suspended.  These reports should have never occurred as there was no basis for the summary suspension.

29.     Defendants Alexis, Murnane, Lutmerding, and Beavers are White persons, physicians, and/or are agents, officers, and/or employees of MCH.  At all times relevant to the facts averred in this Complaint, they were acting in such capacity, in furtherance of the business interests of MCH, and/or were acting in their respective individual capacities.

30.     The treatment and care of Plaintiff's patient in this case did not fall below the appropriate standard of care.  However, even if his care was rendered in a manner that was actually below the standard of care, that other physicians, not of his race and/or origin, were treated differently.  Specifically, upon belief, there are other physicians associated with MCH whose care and treatment of patients did fall below the appropriate standard of care but that those physicians were treated and/or punished and/or disciplined less severe than Plaintiff.

31.     As of the date of the filing of this Complaint the Plaintiff's privileges at MCH to practice medicine remain wrongfully restricted and/or suspended.

32.     The actions taken by the Defendants were not taken in or with a reasonable belief that the actions were in furtherance of providing or promoting quality health care, rather, were taken and/or motivated with the intent to discriminate against the Plaintiff because he is a Black physician.

33.     The Defendants' actions were taken without making a reasonable effort to obtain the facts and or truth in this matter as the Defendants failed to review adequate medical records and/or get the Plaintiff's side of the story prior to suspending the Plaintiff.

34.     The Defendants' actions were not taken in or with a reasonable belief that the actions were warranted by the facts known by the Defendants at all times in this matter.

35.     None of the Defendants' actions in this matter were reasonable in light of the facts and/or circumstances in this matter.

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. §1981

36.     Plaintiff hereby realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully rewritten herein.

11

37.     The Defendants, acting in their capacities as agents, employees, and/or officers of MCH, conspired to and/or recklessly acted, with intent to discriminate and in a manner meant to or resulting in the Plaintiff being treated differently than other similarly situated white physicians practicing medicine with MCH and MCH associated facilities.

38.     Said wrongful acts and/or conduct by the Defendants were performed knowingly, wantonly, willfully, recklessly and/or intentionally and with motivation to discriminate against the Plaintiff because of his Race.  The Defendants' actions in this case have created a hostile and intolerable work environment for Plaintiff.

39.     Said wrongful acts directly interfered with and made it impossible for the Plaintiff to continue to enter into, make, and/or enforce contracts to provide medical care to patients and/or enter into contracts with medical facilities.  Further, the Defendants were aware of these contracts.

40.     As a direct and proximate result of the aforementioned acts, conduct and/or failure to act by the Defendants, the Plaintiff has suffered loss to his reputation and standing in the medical community, has suffered a loss of patients and income, and suffered the loss of his clinical privileges, has suffered severe emotional and physical distress and humiliation, and has incurred a significant amount of legal fees and expenses.  Further stating, the Plaintiff has suffered loss in the form of "loss opportunity" as he was in the midst of merging practices at this time, however, as a direct result of the Defendants' actions in this case, his merger opportunities failed.

## SECOND CLAIM FOR RELIEF
## 42 U.S.C. §1985

41.     Plaintiff hereby realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully rewritten herein.

42.    The Defendants, acting both in their capacities as agents, employees, and/or officers of MCH, conspired to and/or recklessly acted in a manner meant to or resulting in the Plaintiff being treated differently than other similarly situated White physicians practicing medicine with MCH and MCH associated facilities.  Further stating that the Plaintiff was denied equal protection of laws.

43.    Defendants' actions were directly motivated by the Plaintiff's race.

44.    As a direct and proximate result of the aforementioned acts and conduct and/or failure to act by the Defendants, the Plaintiff's ability to provide medical care to patients and/or ability to enter into contracts with medical facilities has been interfered with and, as a result, the Plaintiff has suffered loss to his reputation and standing in the medical community, has suffered a loss of patients and income, has suffered severe emotional and physical distress and humiliation, and has incurred a significant amount of legal fees and expenses.  Further stating, the Plaintiff has suffered loss in the form of "loss opportunity" as he was in the midst of merging practices at this time, however, as a direct result of the Defendants' actions in this case, his merger opportunities failed.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF OHIO REVISED CODE**
**§4112.02 and 4112.99**

45.    Plaintiff hereby realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully rewritten herein.

46.    The Defendants, acting both in their capacities as agents, employees, and/or officers of MCH, subjected the Plaintiff to unlawful discrimination by treating the Plaintiff differently compared to other similarly situated white physicians practicing

13

medicine with MCH and MCH associated facilities, with respect to terms, conditions, and privileges of their employment with Defendants.

47.    Defendants' actions were directly motivated by the Plaintiff's race.

48.    As a direct and proximate result of the aforementioned acts, conduct and/or failure to act by the Defendants, the Plaintiff's ability to provide medical care to patients and/or ability to enter into contracts with medical facilities has been interfered with and, as a result, the Plaintiff has suffered loss to his reputation and standing in the medical community, has suffered a loss of patients and income, has suffered severe emotional and physical distress and humiliation, and has incurred a significant amount of legal fees and expenses.  Further stating, the Plaintiff has suffered loss in the form of "loss opportunity" as he was in the midst of merging practices at this time, however, as a direct result of the Defendants' actions in this case, his merger opportunities failed.

49.    The Plaintiff submits that the Defendants' actions as alleged above constitute a violation of Ohio Revised Code §4112.02 et. seq. and §4112.99.

### FOURTH CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

50.    Plaintiff hereby realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully rewritten herein.

51.    The Defendants were aware that the Plaintiff had business relationships with patients to provide medical care and that the Plaintiff had business relationships with various medical facilities in Ohio.

52.    Even with direct knowledge of these business relationships, the Defendants intentionally interfered with these relationships causing a breach in and/or termination of those relationships.  Further, that the Defendants' actions causing a breach in and/or

14

termination of the Plaintiff's business relationships were committed without immunity and/or privilege.

53.     As a direct and proximate result of the aforementioned acts and conduct set forth above, and/or failure to act by the Defendants, the Plaintiff's ability to provide medical care to patients and/or ability to enter into contracts with medical facilities has been interfered with and, as a result, the Plaintiff has suffered loss to his reputation and standing in the medical community, has suffered a loss of patients and income, has suffered severe emotional and physical distress and humiliation, and has incurred a significant amount of legal fees and expenses.  Further stating, the Plaintiff has suffered loss in the form of "loss opportunity" as he was in the midst of merging practices at this time, however, as a direct result of the Defendants' actions in this case, his merger opportunities failed.  The Defendants' actions severely disrupted and interfered with Doctor Guinn's relationship with his patients.

## FIFTH CLAIM FOR RELIEF
## DEFAMATION

54.     Plaintiff hereby realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully rewritten herein.

55.     The Defendants intentionally, recklessly, and/or negligently uttered and/or published, with malice, to third parties false statements and/or false information concerning the Plaintiff that are/is defamatory to the Plaintiff.

56.     As a direct and proximate result of the aforementioned acts and conduct set forth above, and/or failure to act by the Defendants, the Plaintiff's ability to provide medical care to patients and/or ability to enter into contracts with medical facilities has been interfered with and, as a result, the Plaintiff has suffered loss to his reputation and

standing in the medical community, has suffered a loss of patients and income, has suffered severe emotional and physical distress and humiliation, and has incurred a significant amount of legal fees and expenses. Further stating, the Plaintiff has suffered loss in the form of "loss opportunity" as he was in the midst of merging practices at this time, however, as a direct result of the Defendants' actions in this case, his merger opportunities failed.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and/or severally, on all his foregoing claims as follows:

1.     Compensatory damages against each Defendant in an amount in excess of twenty-five million dollars and 00/100 cents ($25,000,000.00) each;

2.     Punitive damages against each Defendant in an amount in excess of twenty-five million dollars and 00/100 cents ($25,000,000.00) each;

3.     Actual costs, reasonable attorney fess, and expenses of this action;

4.     Granting the Defendant any and all other relief as may been deemed appropriate by the Court.

Respectfully submitted,

James S. Mowery, Jr. (0040227) (Trial Attorney)
Nicholas W. Yaeger (0077784)
MOWERY, YOUELL & GALEANO, LTD.
425 Metro Place North, Suite 420
Dublin, Ohio 43017
Telephone (614) 764-1444
Facsimile (614) 760-8654
Email jsm525@aol.com
Email nyaeger@myglaw.com
*Attorneys for the Plaintiff*

16

## JURY DEMAND

Plaintiff hereby demands a jury trial for all issues contained in this Complaint.

/s/ James S. Mowery, Jr.

James S. Mowery, Jr. (0040227)  (Trial Attorney)
Nicholas W. Yaeger (0077784)

## VERIFICATION

**STATE OF OHIO**          )
                           )     ss:
**COUNTY OF FRANKLIN**     )

Now comes the affiant, first being duly sworn and cautioned, and hereby states

that he has read the foregoing complaint and that the averments contained therein are true

and accurate to the best of his knowledge.

**FURTHER AFFIANT SAYETH NAUGHT.**

VINCENT L. GUINN, M.D.

Sworn to me and subscribed in my presence this 18th day of March

2009.

Notary Public, State of Ohio

WENDE J. SWANSON
Notary Public
State of Ohio
My Commission Expires Feb. 15, 2011

17