UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

VINCENT L. GUINN, M.D.,

       Plaintiff,                      Case No. 2:09-cv-226
                                                JUDGE EDMUND A. SARGUS, JR.
    v.                               Magistrate Judge Terence P. Kemp

MOUNT CARMEL HEALTH, et al.,

       Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' Motion to Dismiss

Claims for Relief One, Two, Three, Six, and Seven of Plaintiff's Second Amended Complaint

("Defendants' First Motion to Dismiss") (Doc. 50), which is **GRANTED IN PART AND**

**DENIED IN PART**, and Defendants Claus Von Zychlin, Douglas G. Finnie, M.D., Columbus

Cardiology Consultants, Inc., Emergency Services, Inc., Jeffrey B. Thurston, D.O., Columbus

Inpatient Care, Inc., William J. Fanning, M.D., and Cardiothoracic Surgeons, Inc.'s Motion to

Dismiss Claims for Relief Four and Five of Plaintiff's Complaint ("Defendants' Second Motion

to Dismiss") (Doc. 51), which is **GRANTED IN PART AND DENIED IN PART**.

### I. Background

The facts relied upon in this Opinion and Order were taken from the pleadings or

documents that are properly considered part of the pleadings. *See Weiner v. Klais and Co., Inc.*,

108 F.3d 86, 89 (6th Cir. 1997) (documents are considered part of the pleadings if they are

referred to in the plaintiff's complaint and are central to the plaintiff's claim); *see also Yeary v.*

*Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (if extrinsic materials merely

"fill in the contours and details of the plaintiff's complaint, and add nothing new," they may be considered without converting the motion to one for summary judgment).

Plaintiff, Vincent L. Guinn, M.D., is a successful African American physician who opened his medical practice in 2002 specializing in electrophysiology and cardiac care. Prior to Dr. Guinn opening his own practice, he was associated with a group practice and, during the years 2001-2002, was the chairperson of the Department of Cardiovascular Disease of Mount Carmel Medical Center in Columbus, Ohio and the vice chairperson in 1998 and 1999.

In 2007, Dr. Guinn was primarily associated with Defendant Mount Carmel Health. On approximately April 3, 2007, the Clinical Department Council of Mount Carmel West Hospital held a meeting at which Dr. Guinn's conduct in placing an intracardial device in a patient was discussed. Dr. Guinn alleges that Defendant Thomas Alexis, M.D. reported to the Council that Dr. Guinn had placed the device in a patient whose previous intracardial device pocket had broken down and was infected. Dr. Guinn alleges that Dr. Alexis' statement was false and that he knew that it was false when he reported it. Based upon this reported incident, the Clinical Department Council "summarily suspended" Dr. Guinn's clinical privileges. (Pl.'s Second Am. Compl. ¶ 33; Doc. 45.)

On April 13, 2007, Mount Carmel Health notified Dr. Guinn of the Clinical Department Council's decision to suspend his clinical privileges and informed him that Mount Carmel Health's Medical Executive Committee would review the decision. The Medical Executive Committee met on April 17, 2007, and upheld the Clinical Department Council's determination to summarily suspend Dr. Guinn's clinical privileges.

On October 16, 2007, Mount Carmel Health held an Ad Hoc Hearing on Dr. Guinn's

2

suspension. The Ad Hoc Hearing Committee upheld the Medical Executive Committee's recommendation to suspend Dr. Guinn's privileges. Mount Carmel Health's Board of Trustees reviewed and upheld the Ad Hoc Hearing Committee's decision on July 14, 2008.

On March 24, 2009, Dr. Guinn filed this action. He has amended the complaint twice. The second amended complaint names as defendants Mount Carmel Health, Mount Carmel Health Systems, Trinity Health Corporation, Chief Executive Officer of Mount Carmel Health Systems Claus Von Zychlin, Medard R. Lutmerding, M.D. and Emergency Services, Inc., Thomas R. Alexis, M.D. and Mount Carmel Health Providers, Inc. d/b/a Big Run Internal Medicine, Michael R. Murnane, M.D. and Columbus Cardiology Consultants, Inc., Barney B. Beaver, D.O. and Knollwood Physicians Group/Heart and Rhythm Specialists, Jeffrey B. Thurston, D.O. and Columbus Inpatient Care, Inc., William J. Fanning, M.D. and Cardiothoracic Surgeons, Inc., and Douglas G. Finnie, M.D.

Dr. Guinn alleges that Defendants purposefully and intentionally engaged in a course of conduct to drive him from the medical field of electrophysiology and cardiac care by claiming falsely that his work relating to one specific patient fell below the applicable standard of care. Dr. Guinn contends that Defendants' motivation was to realize economic gain by excluding him as a competitor and to discriminate against him because he is an African American. In the second amended complaint he alleges claims for: (1) race discrimination in violation of 42 U.S.C. § 1981; (2) conspiracy to engage in race discrimination in violation of 42 U.S.C. § 1985; (3) race discrimination in violation of Ohio Revised Code §§ 4112.02, 4112.99; (4) tortious

3

interference with business relationships[1]; (5) defamation; (6) antitrust violations under the

Sherman Act, 15 U.S.C. §§ 1, 2; and (7) antitrust violations under Ohio's Valentine Act, Ohio

Revised Code § 1331 *et seq.*

On July 24, 2011, Defendants filed their First Motion to Dismiss. (Doc. 50.) Dr. Guinn

filed his Memorandum in Opposition to Defendants' First Motion to Dismiss (Doc. 63) on

October 7, 2011 and on November 7, 2011, Defendants filed a Reply Memorandum in Support of

their First Motion to Dismiss (Doc. 69).

Also on July 24, 2011, Defendants Claus Von Zychlin, Douglas G. Finnie, M.D.,

Columbus Cardiology Consultants, Inc., Emergency services, Inc., Jeffrey B. Thurston, D.O.,

Columbus Inpatient Care, Inc., William J. Fanning, M.D., and Cardiothoracic Surgeons, Inc.'s

("Moving Defendants") filed Defendants' Second Motion to Dismiss. (Doc. 51.) On October 7,

2011, Dr. Guinn filed his Memorandum in Opposition to Defendants' Second Motion to Dismiss

(Doc. 64), and on November 7, 2011, the Moving Defendants filed their Reply Memorandum in

Support of Defendants' Second Motion to Dismiss (Doc. 68).

## II. Standard

Defendants move under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which

provides for dismissal of actions that fail to state a claim upon which relief can be granted.

Under this standard, a court must construe the complaint in favor of the plaintiff, accept the

factual allegations contained in the complaint as true, and determine whether the plaintiff's

---

[1]Dr. Guinn refers to his claim as one for tortious interference with "contract" but alleges facts that support a claim that Defendants interfered with his business relationships. Additionally, in his Memorandum in Opposition to Defendants' Second Motion to Dismiss he argues that Defendants interfered with his business relationships. Thus, the Court, as did Defendants, accepts the claim as one for interference with business relationships.

factual allegations "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

*Twombly* , 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (clarifying the

plausibility standard articulated in *Twombly*).[2] "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The factual allegations of a

pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*,

550 U.S. at 555.

### III. Defendants' First Motion to Dismiss

In Defendants' First Motion to Dismiss, they move for dismissal of Dr. Guinn's antitrust

and discrimination claims.

---

[2]In Dr.Guinn's Memorandum in Opposition to Defendants' First Motion to Dismiss, he sets out a now defunct standard, *i.e.*, this Court may dismiss a "complaint 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" (Doc. 63 at 17) (quoting *Nilvar, M.D. v. Mercy Health System Western Ohio*, 142 F. Supp.2d 859, 867 (S.D. Ohio 2000)). That language is taken from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which stated that a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). As the Sixth Circuit has explained, however, that the Supreme Court has disavowed that language:

> In [*Twombly*], the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 563.

*Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). The Court notes that, although Dr. Guinn set forth the incorrect standard, he does not improperly rely on that standard, and instead correctly argues that he has stated plausible claims for relief.

## A. Antitrust Claims

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations." 15 U.S.C. § 1. Section 2 of the Sherman Act prohibits monopolies and attempts, combinations, or conspiracies to monopolize trade or commerce. 15 U.S.C. § 2. Section 4 of the Clayton Act provides for a private right of action under the Sherman Act, with the recovery of treble damages, costs, and attorney fees to "any person, who [has been] injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a).

"Ohio's antitrust statute, the Valentine Act, was modeled after the Sherman Act, and the Ohio Supreme Court has interpreted the Valentine Act in light of federal decisions construing the Sherman Act." *Care Heating & Cooling, Inc. v. Am. Standard, Inc.*, 427 F.3d 1008, 1012, n. 1 (6th Cir. 2005) (citing *C.K. & J.K., Inc., Fairview Shopping Ctr.*, 63 Ohio St. 2d 201 (1980)). *See also Johnson v. Microsoft Corp.*, 106 Ohio St. 3d 278, 281 (2005) ("we will review the status of federal [antitrust] law with respect to who may properly assert an antitrust action" under the Valentine Act). Therefore, Dr. Guinn's claims under the Valentine Act rise or fall with those under the Sherman Act.

Defendants argue that Dr. Guinn's claims filed under the Sherman Act must be dismissed because he does not have standing to bring those claims, he has failed to sufficiently allege that Defendants entered into an express or tacit agreement to exclude him from the market, and/or because many of the individual defendants cannot conspire with one another as a matter of law based upon the intra-corporate conspiracy doctrine. Because the Court finds Defendants' first

6

argument well taken, it need not address the remaining two.

As to Defendants' first argument, "antitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement [a court] must dismiss it as a matter of law--lest the antitrust laws become a treble-damages sword rather than the shield against competition-destroying conduct that Congress meant them to be." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007). "[A]ntitrust standing and Article III standing are not one and the same, and [a court] not only may--but [it] must--reject claims under Rule 12(b)(6) when antitrust standing is missing." *Id.* at 449. *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (standing, in a conventional Article III sense, requires proof of actual injury, causation and redressability).

Of the various requirements for establishing antitrust standing, the one that concerns the instant analysis is antitrust injury, which is a "necessary, but not always sufficient," condition of antitrust standing.[3] *NicSand, Inc.*, 507 F.3d at 450 (quoting *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986)). "An antitrust claimant must show more than merely an 'injury causally linked' to a competitive practice; it 'must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.'" *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).

---

[3]"Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 (1983); *see also Bodie-Rickett & Assocs. v. Mars, Inc.*, 957 F.2d 287 (6th Cir. 1982) (setting forth the factors to be balanced in such an analysis). In their motion, however, Defendants do not dispute that Dr. Guinn has sufficiently alleged that he is the proper party to bring this action.

"[T]he antitrust laws . . . were enacted for 'the protection of competition, not

competitors.'" *Brunswick*, 429 U.S. at 488 (quoting *Brown Shoe v. United States*, 370 U.S. 294,

320 (1962)). "[A]ntitrust standing 'ensures that a plaintiff can recover only if the loss stems from

a competition-reducing aspect or effect of the defendant's behavior.'" *NicSand, Inc.*, 507 F.3d at

449 (citing *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)). In other words,

if Dr. Guinn was harmed as a result of Defendants' actions, but consumers of the medical

services offered by Dr. Guinn and Defendants suffered no ill effects, then there would be no

violation of the antitrust laws. *See Aventis Envtl. Sci. USA LP v. Scotts Co.*, 383 F. Supp. 2d 488,

503 (S.D. N.Y. 2005) ("In other words, if AgrEvo EH was harmed as a result of Scotts' and

Monsanto's actions, but NSH consumers suffered no ill effects, then there would be no violation

of the antitrust laws."). To sufficiently allege harm to competition, a plaintiff must put forth

factual allegations plausibly suggesting that there has been an adverse effect on prices, output, or

quality of goods in the relevant market as a result of the challenged actions. *See Jefferson Parish*

*Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 31 (1984); *Capital Imaging Assocs. v. Mohawk Valley*

*Med. Assocs.*, 996 F.2d 537, 541 (2d Cir. 1993).

Dr. Guinn submits that, contrary to Defendants' assertions, he has pleaded facts that

plausibly suggest that an antitrust injury has occurred, which is sufficient to confer antitrust

standing:

> Here, Dr. Guinn specifically alleges that, beginning in April, 2007, the
> Defendants conspired and reported false information to the [Clinical Department
> Council] to begin a sham peer review process intending to drive Dr. Guinn from
> the relevant medical market. (Pls. Compl. ¶¶ 31-33, 36, 38, 42, 45, 47). The
> harm suffered by Dr. Guinn was that his practice was brought to a screeching halt.
> (Pl.'s. Compl. ¶ 40). Further, that the relevant market (*i.e.*, Franklin and
> surrounding counties, and central Ohio) (Pl.'s Second Am. Compl. ¶ 26) was

8

> harmed. Specifically, substantial interstate commerce involved including medical
> supplies and the quality of medical services was harmed because patients that
> utilized Dr. Guinn's services at [Mount Carmel Health] facilities could no longer
> after his privileges were suspended. (Pls. Compl. ¶¶ 25-28). As a direct result of
> the Defendants successful monopolization of the [intracardial device] market,
> patients had to choose between using one of the Defendants or some other
> physician because Dr. Guinn could not practice medicine in that field with Mount
> Carmel. (*Id.*).

(Doc. 63 at 30) (relying upon *New York Medscan LLC v. N.Y. Univ. Sch. of Med.*, 430 F. Supp.2d

140 (S.D. N.Y. 2006)). Dr. Guinn also alleges that Defendants' actions negatively impacted the

relevant market because they "affected the cost of medical services provided and the choices of

the patients." (Doc. 63 at 23) (citing Pl.'s Second Am. Compl. ¶ 26-28).

Dr. Guinn's allegations, however, simply do not permit the Court to make a reasonable

inference that Defendants' actions reduced competition in the relevant market, *i.e.*, caused injury

"of the type the antitrust laws were intended to prevent." *Brunswick Corp.*, 429 U.S. at 489.

While Dr. Guinn does restate the appropriate language consistent with antitrust injury–the quality

of medical services was harmed, consumers had less choice, and the cost of medical services was

negatively impacted–his factual allegations do not support these contentions. *See e.g.*,

*CBCInnovis v. Equifax Info. Servs. LLC*, 2008-1 Trade Cas. (CCH) P76,199, 2008 U.S. Dist.

LEXIS 11700, at *18 (S.D. Ohio Feb. 4, 2008) ("Though Plaintiffs may be correct in asserting

that Equifax's Reissue Policy is resulting in 'higher prices, lower quality services, and less

choice for lenders,' there is nothing more to support these naked assertions. . . . Plaintiffs have

therefore failed to assert a market-wide injury or specify any competition reducing effect of

Defendants' behavior. Rather, Plaintiffs appear to just be restating the antitrust laws. ").

First, Dr. Guinn contends that he sufficiently alleged market-wide injury because the cost

of medical services was negatively impacted by Defendants' actions. Dr. Guinn, however, provides no factual allegations to support this contention. He merely states a conclusion. There is no allegation indicating that patients in the relevant geographic area were required to pay higher costs for services because of Dr. Guinn's removal as a provider. For example, in the case upon which Dr. Guinn relies to support his claim that he has alleged an injury sufficient to confer antitrust standing, *New York Medscan*, the court found that the plaintiffs had alleged sufficient factual allegations that the defendants' actions negatively impacted the cost of patient services.

In that case, the plaintiffs were a radiologist, Karolyn Kerr, M.D., and a limited liability company, New York Medscan. New York Medscan provided diagnostic imaging services at its office in New York City office. That company "invested millions of dollars in high-technology imaging scanners, other equipment, and non-medical staff to provide patients with state-of-the-art diagnostic imaging[, PET/CT scans]." *Id.* at 142. The plaintiffs had a three year contractual agreement with the New York University ("NYU") school of medicine to provide office facilities, equipment, and services to NYU radiologists for PET/CT outpatient diagnostic scanning. When an insured patient received a PET/CT scan, the performing radiologist would bill the patient's health plan for the costs of administering the scan and the radiologist's fee for interpreting the scan. The health plan would pay most or all of these costs, either directly or through a contractual administrator such as the defendant CareCore National LLC ("CCN").

CCN controlled the PET/CT services for more than 22 million subscribers, including approximately 3.5 million subscribers in New York City. This represented a dominant share of the market in New York City. "Thus, approval by CCN [wa]s necessary for a radiologist or scanning facility to effectively compete in the New York market." *Id.* at 143. By determining

10

which facilities and radiologists CCN would authorize to provide PET/CT services, CCN and its board members, who were radiologists competing with each other and with the radiologists and facilities they determine to authorize or refuse, "effectively control[ed] the diagnostic imaging market." *Id.* New York Medscan and NYU engaged in negotiations for the renewal of their contractual agreement and a CCN boardmember advised New York Medscan that if it did not renew the agreement or enter into a new contract with NYU on the terms it demanded, then New York Medscan and Dr. Kerr would lose their status as a CCN-approved facility and a CCN-approved radiologist.

The plaintiffs filed an antitrust suit, and the court, in reviewing whether the plaintiffs alleged antitrust standing sufficient to survive a motion to dismiss, evaluated the plaintiffs' allegations of market-wide injury. The plaintiffs alleged that the defendants' actions negatively impacted, *inter alia*, the price of diagnostic imaging services in the New York City area. The court agreed. The plaintiffs in that case, unlike Dr. Guinn here, set forth facts from which a reasonable inference could be made that the cost of PET/CT scans for the consumer increased significantly. That is, the consumers of PET/CT scans could no longer receive approval from CCN to obtain the scans on the specialized state-of-art equipment owned only by New York Medscan. The patients were left with the choice of paying for the scans themselves or obtaining the scans from Defendants on inferior equipment.

This brings the Court to Dr. Guinn's second contention as to why his allegations of harm are sufficient to confer antitrust standing, *i.e.*, the quality of medical services. Dr. Guinn contends that the quality of medical services was harmed because patients who had previously utilized his services no longer had that as a choice. That injury, however, did nothing to reduce

11

competition in the market. It is the impact upon competitive conditions in a definable market which distinguishes the antitrust violation from the ordinary business tort. Here, Dr. Guinn admits that the patients could either choose one of the physician-defendants as a doctor or some other physician. Thus, eliminating Dr. Guinn as a competitor did not eliminate competition between Defendants and other doctors in the relevant geographic area nor did it prevent the relevant patients from choosing from a large array of doctors. A plaintiff is required to show not merely injury to himself as a competitor, but rather injury to competition. Generally, "the elimination of a single competitor, standing alone, does not prove anticompetitive effect." *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 291 (9th Cir. 1979). *See also Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) ("Of course, conduct that eliminates rivals reduces competition. But reduction of competition does not invoke the Sherman Act until it harms consumer welfare."); *Products Liab. Ins. Agency, Inc. v. Crum & Forster Ins. Cos.*, 682 F.2d 660, 663 (7th Cir. 1982) ("Now there is a sense in which eliminating even a single competitor reduces competition. But it is not the sense that is relevant in deciding whether the antitrust laws have been violated."); *Gentile v. Fifth Ave. Otolaryngology, Inc.*, No. 4:05 CV 2936, 2006 U.S. Dist. LEXIS 60881, at *17-18 (N.D. Ohio Aug. 28, 2006) ("The loss of staff privileges does not harm the consumer of medical services, but simply constitutes a personal harm to the individual physician."); *Sokol v. Akron Gen. Med. Ctr.*, No. 5:95CV1108, 1997 U.S. Dist. LEXIS 22078, at *32, n. 4 (N.D. Ohio Sept. 30, 1997), *rev.d on other grounds*, 173 F.3d 1026 (6th Cir. 1999) ("numerous courts have concluded that the loss of a physician's staff privileges, without more, is not an antitrust injury because the loss does not harm the consumer of medical services, but simply constitutes a personal harm to the individual physician").

12

Referring back to the case upon which Dr. Guinn relies, *New York Medscan*, and its

consideration of "quality" and "choice" harm, the court explained:

> The complaint alleges that the quality of PET/CT services has decreased as a
> result of defendants' conduct because patients who had previously received
> PET/CT scans at Medscan were forced to receive subsequent scans on different
> equipment. With the use of different imaging devices, the accuracy of
> comparisons of the scans decreases, thereby adversely affecting diagnosis and
> treatment. Further, by requiring patients to change facilities, the continuity of
> patient treatment is disturbed, resulting in an adverse emotional impact on
> patients. Thus, accepting the allegations as true, this is not a situation where,
> "from the consumers' point of view, nothing about the market has changed" as a
> result of defendants' conduct. *Balaklaw* [*v. Lovell*], 14 F.3d [793], 798 [(2d Cir.
> 1994)]. Instead, the quality of diagnostic imaging services purportedly has
> decreased, and the courts have repeatedly held that a decline in quality is among
> the injuries that the antitrust laws were designed to prevent. *See, e.g., Capital
> Imaging Assocs., P.C.*, 996 F.2d at 546; *Aventis Envtl. Sci. USA LP.*, 383 F. Supp.
> 2d at 503; *Nilavar* [*v. Mercy Health Sys. W. Ohio*], 142 F. Supp. 2d [859], 874
> [(S.D. Ohio 2000)].

*Id.* at 147-48.

In the instant action, Dr. Guinn uses the phrase "quality of care," which is consistent with

antitrust injury; however, the factual allegations do not plausibly suggest antitrust injury. That is,

the factual allegation that the "quality of medical services was harmed because patients [who]

utilized Dr. Guinn's services at MCH facilities could no longer after his privileges were

suspended. . . . [and therefore] Patients had to choose between using one of the Defendants or

some other physician because Dr. Guinn could not practice medicine in that field with Mount

Carmel" does not support an inference that there was an adverse effect on the quality of services

in the relevant market. Unlike the patients in *New York Medscan*, the patients at issue here were

not forced to go to a physician that utilized different equipment, which impacted adversely the

accuracy of the test results and would have an effect on their treatment. Nor were any patients

forced to change facilities at which they had been receiving their treatments thereby disturbing the continuity of their treatment, resulting in an adverse emotional impact on patients. No reasonable inference can be made from Dr. Guinn's allegations that the patients at issue here suffered any ill effects in the quality of their care by removing him as their physician.

The Court concludes that when accepting all of Dr. Guinn's allegations as true and making all justifiable inferences in his favor, he has failed to allege enough factual matter to suggest that an antitrust injury occurred that was sufficient to confer antitrust standing. *See Twombly*, 550 U.S. at 557 (antitrust claimant must put forth factual "allegations plausibly suggesting (not merely consistent with)" antitrust injury). Additionally, the Court finds that no amendment to the complaint could remedy this failure, for the insufficiency lies in the nature of the alleged harm, not in the specific allegations pleaded. Accordingly, the Court **GRANTS** Defendants' First Motion to Dismiss as it relates to Dr. Guinn's state and federal antitrust claims.

**B. Discrimination Claims**

Dr. Guinn alleges race discrimination in violation of Ohio Revised Code § 4112, *et. seq.*, 42 U.S.C. § 1981, and 42 U.S.C. § 1985. Defendants move for dismissal of all three claims for relief for failure to state a claim upon which relief may be granted.

**1. 42 U.S.C. § 1981 and Ohio Revised Code § 4112**

Dr. Guinn alleges that Defendants discriminated against him on the basis of race in violation of the Ohio Revised Code Chapter 4112 and 42 U.S.C. § 1981. Under Ohio law, it is unlawful:

> For any employer, because of the race . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any

14

matter directly or indirectly related to employment.

Ohio Rev. Code § 4112.02(A). Similarly, § 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts." 42 U.S.C. § 1981. Both the Ohio Civil Rights Act and § 1981 are analyzed under the same standards as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. *See Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008) ("[a]ll references throughout this opinion to Title VII are therefore equally applicable to the plaintiffs' claims under Ohio Revised Code § 4112"); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000) (noting that the elements of *prima facie* case and burdens of proof are the same for Title VII and § 1981).

"[T]o establish a *prima facie* case of discrimination by the defendant,[4] 'the plaintiff must show (1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class. . . . the fourth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably.'" *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002) (alteration in original) (quoting *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)). Defendants take issue only with the fourth element, arguing that "Plaintiff has failed to plead any facts that would render plausible his statement that he was treated differently from other similarly-situated white physicians [and he]

---

[4]The United States Supreme Court held in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), the *prima facie* case "is an evidentiary standard, not a pleading requirement." The Court reviews the *prima facie* case standard in the Rule 12(b)(6) context to determine whether a plaintiff has given the defendant fair notice of his or her claim and the grounds upon which it rests–not to determine if the standard is met.

has failed to identify any similarly-situated physicians or allege how those physicians were treated differently from Plaintiff." (Doc. 50 at 8.) Defendants' arguments are not well taken.

Defendants contend that this case is similar to *Noble v. Genco I, Inc.*, where this Court found that the plaintiff's allegations were insufficient to save his race discrimination claims from the defendants' motion to dismiss. 94 Empl. Prac. Dec. (CCH) P44,080, 2010 U.S. Dist. LEXIS 137383 (S.D. Ohio Dec. 30, 2010). Judge Marbley explained:

> Plaintiff alleges in Count I that he "was disparately treated based on his race" and states claims for racial discrimination in Counts I - III. Plaintiff's only other allegations regarding racial discrimination concern Defendant's "long documented history of race discrimination complaints" filed by other black employees of the Defendant before Plaintiff became an employee of Defendant. Plaintiff has pled no facts that Defendant treated him differently than similarly situated white employees or that Defendant has an employment practice with a disproportionate negative impact on a particular race.

*Id.* at *7.

Dr. Guinn, however, has pleaded significantly more than simply "he was treated disparately based on his race." Indeed, Dr. Guinn specifically made allegations that he was treated less favorably than similarly situated coworkers; allegations that this Court found lacking in *Noble*. Moreover, not only does Dr. Guinn allege that he was treated less favorably than his similarly situated white coworkers, he states specifically in what way he was treated less favorably. That is, Dr. Guinn has alleged that Defendants (individually, officially, and in concert with each other) fabricated a patently false and untrue patient care incident allowing them to institute a "sham" peer review that they then utilized to drive Dr. Guinn from Mount Carmel Health because he is African American. He avers that white physicians with privileges at Mount Carmel Health that have had actual patient care issues have either not been subjected to peer

16

review or have been subjected to peer review but have received far less severe sanctions.

Courts in this District regularly find allegations similar to Dr. Guinn's to be sufficient to withstand a motion to dismiss under Rule 12(b)(6). *See e.g., Campbell v. Korleski*, No. 2:10-cv-1129, 2011 U.S. Dist. LEXIS 76310, at *17 (S.D. Ohio July 14, 2011) (Frost, J.) (finding sufficient the plaintiff's "alleg[ations] that he was treated less favorably than his similarly situated white coworkers [because] he was evaluated on a racially discriminatory basis that prevented him from being promoted [and he] (unlike his similarly situated white coworkers) [] was placed into positions where his opportunity for advancement was minimal."); *cf. Ndene v. Columbus Acad.*, 2:09-CV-892, 2010 U.S. Dist. LEXIS 35235, at 9-10 (S.D. Ohio March 17, 2010) (King, M.J.) ("this Court concludes that Plaintiff's failure to specifically plead that she was treated less favorably than an individual outside her protected class does not warrant dismissal of this claim" where the allegations "are not conclusory in nature" and have "given fair notice of the claim and the grounds upon which it rests").

Accordingly, the Court **DENIES** Defendants' First Motion to Dismiss as it relates to Dr. Guinn's race discrimination claims filed under 42 U.S.C. § 1981 and Ohio Revised Code § 4112.

### 2. 42 U.S.C. § 1985

The elements of a 42 U.S.C. § 1985 claim are:

(1) a conspiracy;

(2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;

(3) an act in furtherance of the conspiracy; and

(4) an injury to either person or property or a deprivation of any right or privilege

17

of a United States citizen.

*Conklin v. Lovely*, 834 F.2d 543, 548 (6th Cir. 1987). Defendants argue that they are entitled to

dismissal of this claim because Dr. Guinn has failed to plead that any of the defendants conspired

together with the express purpose of discriminating against him on the basis of his race.

Defendants' argument is not well taken.

Throughout the second amended complaint, Dr. Guinn alleges that Defendants worked

together and conspired to drive him from Mount Carmel Health and that Defendants committed

acts in furtherance of their agreement. Further, Dr. Guinn alleges that Defendants' actions were

taken, *inter alia*, because of his race, which could be shown by the fact that similarly situated

white coworkers were treated more favorably than he was. The Court finds that it is reasonable

to infer that Defendants are liable for the misconduct alleged and, therefore, that Dr. Guinn has

pleaded a plausible claim for relief under 42 U.S.C. § 1985. Consequently, the Court **DENIES**

Defendants' First Motion to Dismiss as it relates to Dr. Guinn's race discrimination claim filed

under 42 U.S.C. § 1985.

### IV. Defendants' Second Motion to Dismiss

As stated *supra*, Defendants' Second Motion to Dismiss was filed on behalf of the

Moving Defendants, who are Claus Von Zychlin, Douglas G. Finnie, M.D., Columbus

Cardiology Consultants, Inc., Emergency Services, Inc., Jeffrey B. Thurston, D.O., Columbus

Inpatient Care, Inc., William J. Fanning, M.D., and Cardiothoracic Surgeons, Inc.'s. The parties

refer to the four businesses included in the Moving Defendants as the "Practice Group

Defendants." The Moving Defendants request dismissal of Dr.Guinn's claims for defamation

and tortious interference with business relationships. In the event the Court finds that

18

Defendants are entitled to dismissal of either of these two claim, "Dr. Guinn requests this Court to take Defendants' Motion under advisement until such a time as Dr. Guinn has completed meaningful discovery and may supplement the factual allegations contained in his" second amended complaint." (Doc. 64 at 1.)

## A. Defamation Claim

"Defamation is a 'false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame or disgrace, or affects him adversely in his trade or business.'" *Knox v. Neaton Auto Prods. Mfg.*, 375 F.3d 451, 460 (6th Cir. 2004) (citing *Sweitzer v. Outlet Communs., Inc.*, 133 Ohio App. 3d 102, 108 (Ohio Ct. App. 1999).

> The essential elements of a claim for defamation under Ohio law are: (1) the defendant made a false statement, (2) that false statement was defamatory in the sense that it reflected unfavorably of the plaintiff's character or injured his trade or business, (3) the statement was published or communicated, and (4) the defendant acted with the necessary degree of fault.

*Fuchs v. Scripps Howard Broadcasting Co.*, 170 Ohio App. 3d 679, 691 (Ohio Ct. App. 2006).

Defendants argue that Dr. Guinn has "not stated a plausible claim for defamation against the Moving Defendants because he has failed to identify the allegedly defamatory statements allegedly made by the Moving Defendants, failed to identify to whom the statements were made, and in most instances failed to even allege that a single defamatory statement was made in the first place." Defendants arguments are well taken in part.

Dr. Guinn alleges that Dr. Alexis made false statements that harmed Dr. Guinn in his professional capacity to the Clinical Department Council and other competitors on April 3, 2007. (Pl.'s Second Am. Compl. ¶¶ 31-33.) Dr. Guinn further alleges that Drs. Alexis, Beaver, Murnane, and Lutmerding reported false statements that harmed Dr. Guinn in his professional

19

capacity to the Medical Executive Committee on April 17, 2007. *Id.* ¶ 36. Defendants do not contend that these statements were privileged. Consequently, the Court finds that Dr. Guinn has stated a plausible claim for defamation as to these defendants.

However, as to the remaining Moving Defendants, Dr. Guinn makes no allegations that they made any statements at all. Dr. Guinn alleges that the remainder of the Moving Defendants "relied on and incorporated the 'incorrect and false information' in order to render [the Committee's] decision to suspend Dr. Guinn's privileges" and to uphold and justify the suspension. (Doc. 64 at 5.) Reliance upon a false statement and making a false statement are not one in the same. Reliance on a false statement cannot support a defamation claim. Moreover, Dr. Guinn's request for the Court to take this claim under advisement until he can engage in meaningful discovery is denied. No amount of discovery will change the fact that a defamation claim requires the allegation of a false statement. Dr. Guinn makes no suggestion that discovery will elicit more information about who said what at the administrative hearings.

Consequently, the Court **DENIES** Defendants' Second Motion to Dismiss as it relates to the defamation claim brought against Drs. Alexis, Beaver, Murnane, and Lutmerding and **GRANTS** the motion as it relates to the defamation claim brought against the remaining Moving Defendants.

**B. Tortious Interference with Business Relationships Claim**

"Under Ohio law, '[t]he tort of interference with a business relationship occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another.'" *Harris v. Bornhorst*, 513 F.3d 503, 523 (6th Cir. 2008) (quoting *McConnell v. Hunt Sports Enters.*, 132 Ohio App. 3d 657, 689

20

(Ohio Ct. App. 1999) (bracket in original)). "'The elements of tortious interference with a business relationship are (1) a business relationship, (2) the wrongdoer's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and (4) damages resulting therefrom.'" *Id.* (quoting *McConnell, supra*). The Moving Defendants argue that Dr. Guinn "fails to allege any facts from which the Court may infer that such a claim is plausible against the Moving Defendants." (Doc. 51 at 11.) Defendants further assert that the second amended complaint alleges that Mr. Von Zychlin, Dr. Finnie, Dr. Thurston and the Practice Group Defendants were involved only minimally with the peer-review process and that "the only factual averments pertaining to the Practice Group Defendants, [Big Run Internal Medicine], and [Heart and Rhythm Specialists] relate to their 'involvement' or 'future involvement' in economic transactions with Trinity, [Mount Carmel Health], and [Mount Carmel Health Systems]." *Id.* at 7. Defendants' arguments are not well taken.

The Moving Defendants rely upon two cases that they claim stand for the proposition that a tortious interference with business relationships claim cannot survive a motion to dismiss when the plaintiff failed to explain by what act or in what manner the defendant interfered with or caused interference. (Doc. 68 at 4-5) (citing *Bush Truck Leasing, Inc. v. Dynamex, Inc.*, No. 1:09-cv-354, 2011 U.S. Dist. LEXIS 1720, at **17-18 (S.D. Ohio Jan. 7, 2011) and *Scrap Yard, LLC v. City of Cleveland*, No. 1:10-cv-2465, 2011 U.S. Dist. LEXIS 103716, at *24 (N.D. Ohio June 23, 2011)). Unlike those two cases, however, Dr. Guinn here does explain by what act and in what manner Defendants caused interference with his business relationships. Dr. Guinn's second amended complaint is replete with allegations that all of the defendants, including the Moving Defendants, conspired together to exclude Dr. Guinn from practicing medicine in the

21

relevant geographic area so to eliminate him as a competitor. Dr. Guinn further alleges that all of the defendants not only conspired to interfere with his business relationships, but that they actually took actions to so interfere by improperly suspending his clinical privileges based upon information that they knew was false or that they failed to make a reasonable investigation to determine if such information was false and by failing to provide him with any opportunity to respond to the false charges against him. A reasonable inference can be made that the Practice Group Defendants were involved based upon the actions of the defendant doctors with whom the medical practices were associated and the financial gain each would allegedly realize if Dr. Guinn was eliminated as a competitor. Finally, Dr. Guinn avers that his medical practice was harmed significantly by Defendants' interference.

Accepting Dr. Guinn's allegations in the second amended complaint as true, and drawing all justifiable inferences in his favor, the Court concludes that he has sufficiently pleaded a claim for tortious interference with business relationships against the Moving Defendants that is plausible on its face. Consequently, the Court **DENIES** Defendants' Second Motion to Dismiss as it relates to this claim.

## V. Conclusion

For the reasons set forth above:

1. The Court **GRANTS IN PART AND DENIES IN PART** Defendants' First Motion to Dismiss. (Doc. 50.) Specifically, the Court **GRANTS** the motion as it relates to as it relates to Dr. Guinn's federal and state antitrust claims and **DENIES** the motion as it relates to Dr. Guinn's federal and state discrimination claims.

2. The Court **GRANTS IN PART AND DENIES IN PART** Defendants' Second

22

Motion to Dismiss. (Doc. 51.) Specifically, the Court **DENIES** the motion as it relates to Dr. Guinn's claim for tortious interference with business relationships, **DENIES** the motion as it relates to Dr. Guinn's defamation claim brought against Drs. Alexis, Beaver, Murnane, and Lutmerding, and **GRANTS** the motion as it relates to the defamation claim brought against the remaining Moving Defendants.

The Clerk is **DIRECTED** to **REMOVE** these two motions from the Court's pending motions list.

**IT IS SO ORDERED.**

_2-27-2012_
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**