IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Vincent L. Guinn, M.D.,          :

          Plaintiff,             :

     v.                          :     Case No. 2:09-cv-0226

Mount Carmel Health Systems,     :     JUDGE EDMUND A. SARGUS, JR.
et al.,                                Magistrate Judge Kemp
                                 :
          Defendants.

OPINION AND ORDER

     The background of this discrimination case is set forth in
other orders of this Court and will not be repeated here except
as needed to explain the current motion.  This order deals with
plaintiff Dr. Guinn's motion in limine to exclude defendants'
proposed expert testimony of Michael Murnane (Doc. 144).  As
requested by the Court, each side filed a memorandum on this
issue on August 16, 2013.  The Court makes the following ruling.

I.

     Briefly, this case involves Dr. Guinn's claim that he was
treated differently from white doctors when his privileges at Mt.
Carmel Hospital were suspended.  One of the individual defendants
in the case is Dr. Michael Murnane, who was president of Mt.
Carmel's medical staff at the time of the key events.  He was
deposed on April 18, 2013 as a party and as a fact witness.

     On July 29, 2013, Mt. Carmel served Dr. Guinn with
"Defendants' Supplemental Rule 26(a)(2)(C) Disclosure of Expert
Witness."  See Doc. 148, Exhibit A.  That document states, as
relevant to the pending motion, that "Defendants supplementally
disclose [Dr.] Murnane ... as a witness whom Defendants may use
at trial to present evidence under Federal Rule of Evidence 702,
703 and/or 705."  The subject of his testimony under those rules

is described as "the same subject matter to which he testified at his April 18, 2013 deposition" and "the same facts and opinions to which he testified at" that deposition. Id.

The expert witness disclosure date in this case was April 1, 2013. Because Dr. Murnane was not disclosed as a testifying expert prior to that date, Dr. Guinn seeks an order under Fed.R.Civ.P. 37(c)(1) prohibiting Dr. Murnane from offering any opinion testimony at trial.

II.

Rule 37(c)(1) provides, in part:

> (c) **Failure to Disclose, to Supplement an Earlier Response, or to Admit**.
>
> (1) **Failure to Disclose or Supplement**. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Given that Mt. Carmel's supplemental disclosure is admittedly late, and that the trial date is less than a month away, Dr. Guinn argues that he would be prejudiced if Dr. Murnane were allowed to give opinion testimony. Dr. Guinn states that he has neither the time nor the opportunity to cure that prejudice.

Mt. Carmel's response is brief. It asserts that, although its supplemental disclosure was not particularly specific about what testimony Dr. Murnane is expected to give (a point raised in Dr. Guinn's motion), it intends only to ask him the same questions which Dr. Guinn's counsel asked at certain pages and lines of the deposition. Those sections of the deposition are identified on page two of Mt. Carmel's memorandum (Doc. 148). Mt. Carmel claims that it is entitled to supplement its prior disclosure as provided in Fed.R.Civ.P. 26(e)(1)(A) because at some point it became apparent that its prior expert witness

disclosure was incomplete in that "it did not disclose Dr. Murnane as an expert witness." Id. at 3.  Finally, it argues that there can be no viable claim of prejudice since Dr. Guinn has been aware of Dr. Murnane's proposed opinion testimony since April 18, 2013, the date of his deposition.

III.

It is helpful to begin the analysis of the issues raised by Dr. Guinn's motion with a summary of the opinion testimony which Mt. Carmel proposes to offer.  Although the deposition itself (Doc. 134) was filed under seal, the Court sees no reason not to include this summary in a publicly-available document.

The first section of the deposition identified by Mt. Carmel runs from page 105, line 18 to page 108, line 21.  There, Dr. Murnane was asked if he knew of any adverse patient reaction to Dr. Guinn's implantation of a pacemaker in an allegedly infected "pocket" (a pocket is the term used for the area under the skin which holds an implanted pacemaker).  In response, Dr. Murnane gave his opinion about a specific patient's condition at the time of implantation.  The transcript reflects that after he expressed this opinion, Dr. Murnane was given a chance to review the patient records which were presented at Dr. Guinn's hearing and asked to explain why he believed that the patient had an infected pocket.  He then identified, in an additional section of the deposition which Mt. Carmel has designated as opinion evidence it wishes to offer, those portions of the record which he believed showed an infection.  Doc. 134, pages 111-115.  Additional testimony about the same subject appears on pages 117-120 of the deposition, which is the final opinion testimony designated by Mt. Carmel.  Shortly thereafter, Dr. Murnane's testimony makes it clear that his opinion about this particular patient's condition was not one which he formed only recently or which was based on a review of records presented to him in the context of this

3

litigation (although he did review records prior to his
deposition), but was an opinion he expressed to the committee
reviewing the issue of suspension of privileges.  See, e.g., Doc.
134, at page 122, lines 4-13:

> Q.  And what did you say in that [the committee]
> meeting?
>
> A.  I said that I had grave concerns that we were
> not acting in the best interest of our patient based if
> we did not deal with a problem of this magnitude in an
> expeditious manner.  It was apparent from the
> presentation that we were dealing with an infected
> pocket.  Dr. Guinn's own action raised concern in my
> mind that he thought he may be dealing with an infected
> pocket.  And I thought it was necessary for the CDC to
> take action.

Both parties have argued the issue presented as one
involving the late disclosure of opinion testimony, with Dr.
Guinn arguing that the disclosure was too late, and Mt. Carmel
arguing that it was late but still timely under the rules
allowing the supplementation of disclosures.  There is no
question that the designated portions of Dr. Murnane's deposition
constitute expressions of an opinion.  However, it also appears
to be true that he formed the opinion about which he testified
back in 2007 and communicated it to others well before this
litigation began.  Thus, there is a threshold question about
whether Rule 26(a)(2) requires any disclosure of this type of
opinion evidence.  If not, the notice which Mt. Carmel served on
July 29 would have been unnecessary, and there would be no basis
on which to exclude Dr. Murnane's testimony.

The Court begins this discussion with the language of the
applicable rule.  Fed.R.Civ.P. 26(a)(2)(A) provides:

> (2) *Disclosure of Expert Testimony*.
>
> (A) *In General*. In addition to the disclosures
> required by Rule 26(a)(1), a party must disclose to the
> other parties the identity of any witness it may use at

4

trial to present evidence under Federal Rule of
Evidence 702, 703, or 705.

Rule 26(a)(2)(B) supplements this obligation to disclose such a
witness's identity with a requirement that some, but not all,
opinion witnesses must also provide a written report.  Such a
witness is described as "one retained or specially employed to
provide expert testimony in the case or one whose duties as the
party's employee regularly involve giving expert testimony."
Rule 26(a)(2)(C) covers other opinion witnesses, such as treating
physicians who have not been retained specially for purposes of
trial, and requires disclosure of "the subject matter on which
the witness is expected to present evidence" and "a summary of
the facts known and opinions to which the witness is expected to
testify."  The parties appear to disagree about whether Dr.
Murnane is a witness who, despite not being specially retained
for purposes of providing opinion testimony in this case, must
provide a report, or whether a simple summary of his testimony
would constitute an adequate disclosure.  Again, however, this
question need be answered only if Rule 26(a)(2)(A) comes into
play.

As noted above, Rule 26(a)(2) applies only to witnesses who
will "present evidence under Federal Rule of Evidence 702, 703,
or 705."  Those rules are the familiar rules of evidence relating
to opinion testimony.  While it would seem that Dr. Murnane's
testimony, cited above, does fall into the realm of opinion
testimony based upon specialized training and education (a lay
person would probably not be able to review medical records and
reach an opinion about whether they show signs of infection), the
way in which he testified undercuts this conclusion.

When Dr. Murnane responded to the key questions at his
deposition, for the most part he provided historical, rather than
opinion, testimony.  It seems to be a necessary part of this case

5

that the jury hear why the committee decided to suspend Dr. Guinn's privileges on an emergency basis. If, as it appears from Dr. Murnane's testimony, he gave the committee his opinion when it was considering that question, the existence and content of his opinion – whether there was any foundation for it or not, and whether he could even qualify under Rule 702 to express such an opinion – would have to be known by the jury in order for it to understand and evaluate the committee's decision. In other words, his answers to the questions asked, in the context in which they were asked, are not properly viewed as expressions of expert opinion but as testimony about what he thought back in 2007 and what he told others who eventually made the key decision at issue in this case. It would be manifestly improper to exclude this testimony just because he was not timely disclosed as an "expert" under Rule 26(a)(2).

This conclusion may not completely answer the question, however, of the proper scope of Dr. Murnane's testimony on the "infected pocket" issue. Given that Mt. Carmel has designated only his deposition testimony as the opinion evidence it intends to introduce from him at trial, the Court assumes, for purposes of this Opinion and Order, that it will not ask him any other opinion questions, including questions such as "Is that still your opinion today, and, if so, why?" This type of question goes well beyond informing the jury about the history of the privilege suspension proceedings and the role that Dr. Murnane's 2007 opinion may have played in the committee's decision, and would be the type of opinion testimony covered by, at a minimum, Rule 26(a)(2)(C). Should Mt. Carmel argue that it is entitled to ask this type of question, however, the Court agrees with Dr. Guinn that the disclosure made on July 29, 2013 – to the extent that it might arguably inform Dr. Guinn that something of this sort, as opposed to the deposition questions, might be asked – is both

untimely and prejudicial.

In this regard, the Court first rejects any assertion that because Dr. Murnane talked about his 2007 opinion in his deposition, Dr. Guinn should have been on notice that Dr. Murnane would testify about not only that opinion, but would express a similar opinion based on the review of other records or as a matter of current opinion on a hotly disputed issue. It was logical for Dr. Guinn's counsel to test that 2007 opinion through questions about its being in conflict with the opinion of Dr. Guinn's testifying expert, but nothing in the deposition served in any way as notice that Mt. Carmel would ask Dr. Murnane to testify not just as a fact witness but as a current expert on this question.

Second, that disclosure came long after Dr. Murnane was deposed and long after discovery closed. Certainly, had Dr. Guinn known at the April deposition that Mt. Carmel intended to use Dr. Murnane to establish not only that he believed in 2007 that an infected pocket existed and said so at the committee meeting, but to attempt to persuade the jury that Dr. Guinn actually implanted a pacemaker into an infected pocket, the questioning would have been much more extensive - the typical inquiries made of testifying experts - and Dr. Guinn would have had time to provide that information to his expert and to get a supplemental report dealing with it. It is much too late in the day to expect that to occur prior to trial.

Further, the Court rejects Mt. Carmel's claim that it made a proper supplementation under Rule 26(e)(1)(A). It is entirely circular to say that a party may supplement a prior expert disclosure as incomplete because the prior disclosure did not include a particular proposed expert witness at all. The information lacking from the April 1, 2013 disclosure was anything about Dr. Murnane -even his identity as a potential

7

expert witness. If counsel knew then that he would be used in that way, he should have been disclosed. If counsel only decided that later, the prior disclosure was not incomplete when made; it accurately reflected Mt. Carmel's intentions about experts at that time. There is simply no way to bootstrap the later identification of a new expert into Rule 26(e)(1)(A) in this way.

One final word of caution. Counsel for Dr. Guinn may explore, if they choose, the reasons why Dr. Murnane thought in 2007 that the patient in question had an infected pocket. That may or may not be relevant to the question of what the committee which suspended Dr. Guinn's privileges was told by Dr. Murnane, but it might go to the reasonableness of his (and perhaps the committee's) belief that an emergency situation existed, and whether there was some element of pretext involved in the committee's decision. If, however, counsel go further and attempt to discredit Dr. Murnane's 2007 opinion by asking him about information not available to him then, such as additional patient records or opinions of experts retained in this case, counsel may well be opening the door to either a response which takes the form of Dr. Murnane's current opinion on that subject, or questioning from Mt. Carmel's counsel which would elicit that response. The trial judge, however, will be the one to decide, in the context of the trial, if that door has been opened, and how far.

IV.

It is admittedly a fine distinction between allowing a witness to testify about an opinion he or she formed in the past and one which he or she presently holds. If the former is just that - an opinion - and neither the fact that the witness had come to that conclusion, nor the fact that it had been communicated to others, had any relevance to an issue in the case - allowing the witness to testify now about that former opinion

8

probably triggers the operation of Rule 26(a)(2). But that is not this case. The fact that Dr. Murnane, in 2007, formed an opinion about this specific patient's condition and then passed his opinion on to the committee which was considering whether to suspend Dr. Guinn's privileges on an emergency basis has independent relevance in this case, and it is information the jury is entitled to know in order for it to have a complete and accurate historical picture of what occurred in 2007. If his trial testimony covers the same subject, Rule 26(a)(2) is simply inapplicable. Consequently, to the extent that Dr. Guinn's motion to exclude would reach even that testimony, the motion (Doc. 144) is denied.

V.

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.


/s/ Terence P. Kemp
United States Magistrate Judge